749 P.2d 1025
**STATE of Idaho, Plaintiff–Respondent,**

v.

**Alan John McDOUGALL,
Defendant–Appellant.**

No. 16384.

Court of Appeals of Idaho.

Feb. 2, 1988.

Alan E. Trimming, Ada County Public Defender (argued), Klaus Wiebe, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

A siege by police of a residence shared by Alan McDougall and his parents in Boise, Idaho, resulted in gunshot wounds to McDougall and to a police officer. In a jury trial, McDougall was found guilty of one count of aggravated battery and of three counts of aggravated assault. On appeal, McDougall contends that the state failed to prove beyond a reasonable doubt that he acted with criminal intent. McDougall also contends that the sentences pronounced—an indeterminate fifteen-year period to run concurrently with three five-year indeterminate periods—are inappropriate in light of his mental condition at the time of the crimes. We conclude that the state met its burden and that the district court did not abuse its sentencing discretion. Therefore, we affirm.

We begin by summarizing the events surrounding the charges filed against McDougall. Early one June morning, McDougall, who was then a college student, armed himself with a .22 caliber pistol and confronted his parents in their bedroom. He accused them of disturbing the contents of his room and he instructed them not to do so again. With McDougall's permission, his parents left the house. They immediately informed the police and McDougall's psychiatrist, Dr. Lathrop, of this confrontation.

The police soon surrounded the house and attempted to contact McDougall by telephone and by bullhorn. But, apparently, McDougall had gone to sleep. Upon awakening two hours later, he spoke to the police by telephone, but refused to step outside the house. McDougall responded brusquely to subsequent calls or simply did not answer. Although McDougall occasionally brandished a weapon during this period, no shots were exchanged. The police observed that McDougall was apparently enjoying an otherwise quiet breakfast and watching television.

Five hours after the police first attempted to contact McDougall, they turned off the electricity and water to McDougall's residence. McDougall, now armed with a .22 caliber rifle, soon stepped out of the back door. When commanded to drop his weapon, McDougall turned and fired upon the officers. The police responded by shooting at McDougall. McDougall and one officer were seriously injured.

In his defense at trial, McDougall offered the testimony of Dr. Lathrop. Lathrop indicated that McDougall had been his patient for nearly two years. He testified that McDougall suffered from a "schizoaffective disorder." He opined that:

> [O]n the morning of the incident, and the basis of all that was happening, that he [McDougall] had, on top of that, a disassociative reaction, a hysterical reaction out of tremendous fear and that—and therefore, yes, he was—he was gettin' it

from both sides of schizoaffective disorder; that is, he was becoming psychotic and then he was experiencing overwhelming anxiety that he couldn't cope with and that was bringing in other mechanisms of defense personality; notably repression and blocking out of memory and so forth.

McDougall testified on his own behalf. He explained that, on the morning of the confrontation, he had been very upset with his parents and had intended to move out of the house that same day. He testified that he believed the person who initially called him on the phone was an acquaintance harassing him by pretending to be a police officer, and that he, McDougall, was frightened and confused by the sight of armed individuals sneaking about the premises. He claimed that due to their camouflage uniforms, he did not recognize these individuals as police officers. He stated that he did not remember hearing the bullhorn.

As noted above, McDougall was convicted of aggravated battery for wounding one officer, and of three counts of aggravated assault involving two other officers and his mother.[1] The district court sentenced McDougall to indeterminate periods of fifteen years for the battery and five years each for the three assaults, with all sentences to run concurrently. The court found that McDougall's mental condition had contributed to the crimes. *See* I.C. § 19–2523. Pursuant to I.C. § 18–207(b), the court directed that McDougall be placed in an appropriate facility for mental health treatment.

## I

We turn first to McDougall's assertion that criminal intent was not proved by the state. McDougall contends that his mental condition prevented him from forming the requisite intent and, therefore, he is not morally culpable.

In 1982 the Idaho legislature enacted legislation purporting to abolish the defense

---

**1.** McDougall's father stated that the initial confrontation did not cause him to fear that violence was imminent. *See* I.C. § 18–901(b). Therefore, an original charge of assaulting both parents was amended to include only McDougall's mother.

of insanity. *See State v. Potter,* 109 Idaho 967, 712 P.2d 668 (Ct.App.1985). *See generally* L. Thomas, *Breaking the Stone Tablet: Criminal Law Without the Insanity Defense,* 19 IDAHO L.REV. 234 (1983). That legislation is codified at I.C. § 18–207, and reads:

> *Mental condition not a defense—Provision for treatment during incarceration—Reception of evidence.*—(a) Mental condition shall not be a defense to any charge of criminal conduct.
>
> (b) If by the provisions of section 19–2523, Idaho Code, the court finds that one convicted of crime suffers from any mental condition requiring treatment, such person shall be committed to the board of correction or such city or county official as provided by law for placement in an appropriate facility for treatment, having regard for such conditions of security as the case may require. In the event a sentence of incarceration has been imposed, the defendant shall receive treatment in a facility which provides for incarceration or less restrictive confinement. In the event that a course of treatment thus commenced shall be concluded prior to the expiration of the sentence imposed, the offender shall remain liable for the remainder of such sentence, but shall have credit for time incarcerated for treatment.
>
> (c) Nothing herein is intended to prevent the admission of expert evidence on the issues of mens rea or any state of mind which is an element of the offense, subject to the rules of evidence.

█ Although eliminating affirmative defenses based upon the defendant's mental condition, the statute does not relieve the state of its burden of proving beyond a reasonable doubt every fact necessary to constitute the crime charged. *See State v. Beam,* 109 Idaho 616, 710 P.2d 526 (1985), *cert. denied,* 476 U.S. 1153, 106 S.Ct. 2260, 90 L.Ed.2d 704 (1986). In every crime or public offense there still must exist either a union of act and intent, or criminal negligence. *See* I.C. § 18–114.

McDougall does not attack the constitutionality of I.C. § 18–207. Instead, McDougall asserts that the state failed to carry its burden of proving intent, or *mens rea.* The requirement that the state prove every element of a crime beyond a reasonable doubt is grounded in the constitutional guarantee of due process. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979). On appeal, our task is to determine whether the state submitted sufficient evidence to convince a trier of fact beyond a reasonable doubt of the existence of each element of the offense. *Id.*

The intent or *mens rea* element of a crime can be a slippery, obscure, and amorphous concept. *See generally* 1 W. La-FAVE & A. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW §§ 3.4–3.5. To avoid confusion, we center our attention on the intent element of the particular crime charged. To that end, we briefly review the intent element of our aggravated battery and aggravated assault statutes.

Idaho's assault statute includes (a) an unlawful attempt to inflict a violent injury on another person, and (b) an intentional, unlawful threat by word or act to do violence to another person coupled with an apparent ability, which induces a well-founded fear that violence is imminent. *See* I.C. § 18–901.[2] The crime is "aggravated" by the use of certain weapons or if committed with the means likely to produce great bodily harm. *See,* I.C. § 18–905.[3]

---

2. In full, I.C. § 18–901 reads:

> *Assault defined.*—An assault is:
> (a) An unlawful attempt, coupled with apparent ability, to commit a violent injury on the person of another; or
> (b) An intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent.

3. I.C. § 18–905 provides:

> *Aggravated assault defined.*—An aggravated assault is an assault:
> (a) With a deadly weapon or instrument without intent to kill; or
> (b) By any means or force likely to produce great bodily harm [; or
> (c) With any vitriol, corrosive acid, or a caustic chemical of any kind.
> (d) "Deadly weapon or instrument" as used in this chapter is defined to include any fire-

The § 18–901(a) form of the crime was addressed in *State v. Patterson*, 60 Idaho 67, 88 P.2d 493 (1939). There, our Supreme Court determined that:

> an assault with a deadly weapon, or instrument, or by a means or force likely to produce great bodily injury, may be committed if the perpetrator, though lacking a willful intent to commit it, is guilty of criminal negligence in the use of the weapon, instrument, means, or force whereby it is committed.

*Id.* at 73, 88 P.2d at 495. The court also suggested that the degree of negligence required is one so reckless, wanton, and willful as to show a disregard for the safety of others. *Id.* With regard to assault as an attempted battery, LaFave and Scott state that such a crime requires "an intent to cause physical injury to the victim." 2 W. LaFAVE & A. SCOTT, JR., *supra*, at 313.

With respect to assault by intentionally scaring or threat, LaFave and Scott describe this alternative form of assault as requiring "an actual intention to cause apprehension, unless there exists the morally worse intention to cause bodily harm." *Id.* at 316. We believe these characterizations of the intent element accurately reflect the two parts of Idaho's assault defining statute.

Idaho Code § 18–903 describes battery in three forms:

> (a) Willful and unlawful use of force or violence upon the person of another; or
>
> (b) Actual, intentional and unlawful touching or striking of another person against the will of the other; or
>
> (c) Unlawfully and intentionally causing bodily harm to an individual.

Also, a battery is aggravated if it causes great bodily harm, permanent disability, or permanent disfigurement or if a deadly weapon or particular dangerous substances are used. I.C. § 18–907. LaFave and Scott note that there are three alternative statutory mental elements of battery,

> (1) where the defendant acts (or omits to act) with intent to injure; (2) where he acts with criminal negligence but has no intent to injure; (3) where his conduct, though it does not amount to criminal negligence, is nevertheless unlawful, but he has no intent to injure.

2 LaFAVE & A. SCOTT, JR., *supra*, at 303. In this instance, we need not determine whether Idaho's battery statute encompasses a criminally negligent act.

Here, substantial evidence was introduced to prove that the defendant McDougall intentionally used force and violence to harm another person. The evidence was uncontroverted that McDougall precipitated this conflict by confronting his parents, that he discharged his weapon at persons in the yard around his home, and that, as a result, one law enforcement officer was seriously injured. A jury may infer intent from circumstantial evidence. *State v. Oldham*, 92 Idaho 124, 438 P.2d 275 (1968). The evidence was equally persuasive with regard to the circumstances surrounding the assaults. Whether McDougall intentionally threatened his mother with violence, attempted to violently injure two officers with a deadly weapon, and intentionally caused great bodily harm or used a deadly weapon to harm another officer were questions properly presented to the jury. *State v. Dwyer*, 33 Idaho 224, 191 P. 203 (1920). *Cf.* I.C. § 18–207. Apparently, the jury found that McDougall acted with the required intent, and was not persuaded by McDougall's assertion of self-defense.[4] The evidence presented was sufficient to support these conclusions.

McDougall calls our attention to I.C. § 18–115, which reads: "The intent or in-

---

arm, though unloaded or so defective that it cannot be fired.

**4.** McDougall contended that due to his mental state he was not aware that the persons whom he perceived to be "combat soldiers" were in fact police officers. Apparently, the jury took McDougall's mental state and ability to understand events into consideration. Although McDougall was on trial for the more serious charge of "aggravated battery on a law enforcement officer," the jury found McDougall guilty of the lesser included charge of "aggravated battery."

tention is manifested by the circumstances connected with the offense, *and the sound mind and discretion of the accused.*" I.C. § 18–115 (emphasis added). McDougall argues that the sentencing judge's conclusion,

> I think your capacity was very limited at [the time of the crime]. I do not think that you were seeing the world as other people see it or had the essential grasp that one would expect out of a normal person[,]

is inconsistent with a finding by the jury of intent arising out of a sound mind as set forth in I.C. § 18–115.[5] However, we are able to reconcile these two conclusions.

Pursuant to I.C. § 18–207(c), McDougall was permitted to offer Dr. Lathrop's testimony regarding McDougall's state of mind on the morning of the confrontation. Diminished mental capacity may be considered by a jury when determining whether a defendant was capable of forming a specific intent. *See State v. Hall*, 111 Idaho 827, 727 P.2d 1255 (Ct.App.1986). *See also* I.C. § 18–207(c). But, Lathrop did not suggest that McDougall was unaware of his actions—only that McDougall was confused and lacked criminal, wrongful, or malicious intent. When testifying on his own behalf, McDougall admitted that he was aware that he was firing upon human beings and that he intended to shoot in their direction.

The intent mentioned in I.C. § 18–114 and § 18–115 "is not an intent to commit a crime but is merely the intent to knowingly perform the interdicted act...." *State v. Taylor*, 59 Idaho 724, 738, 87 P.2d 454, 460 (1939). Any delusion regarding identity of his victims or confusion about the circumstances, other than a reasonable belief that he acted in self-defense, would not excuse the use of deadly force on other individuals. The jury apparently concluded that McDougall was capable of the mental state required to commit the crimes of aggravated assault and aggravated battery.

In comparison, the sentencing judge's conclusion regarding McDougall's state of mind on the morning in question did not relate specifically to any wrongful intention on the part of McDougall. Instead, the judge suggested only that McDougall suffered, at least temporarily, from a limited ability to perceive and react to events in a rational and thoughtful manner. The conclusion was consistent with the court's decision to order treatment. We do not find the conclusion that McDougall acted of his own volition, but with a reduced mental capacity, to be inconsistent. Notwithstanding the trial court's conclusion that treatment of McDougall was warranted, we hold that sufficient proof was presented for the jury to find beyond a reasonable doubt that McDougall acted in violation of the law and that he harbored the intent necessary to violate the laws.

## II

We turn next to the sentences imposed by the district court. McDougall contends that in light of his mental state and alleged lack of criminal intent, the sentences imposed are unduly harsh and inappropriate. He asserts that punishment is inappropriate where no evil intent to do harm has been shown.

---

5. The jury was instructed:

> **Instruction No. 21**
>
> In a crime such as that of which the defendant is charged in the Information, there must exist a union or joint operation of act or conduct and criminal intent. To constitute criminal intent it is not necessary that there should exist an intent to violate the law. Where a person intentionally does that which the law declares to be a crime, he is acting with criminal intent, even though he may not know that his act or conduct is unlawful.
>
> **Instruction No. 22**
>
> The intent with which an act is done is manifested by the circumstances attending the act, the manner in which it is done, the means used, and the sound mind and discretion of the person committing the act. All persons are of sound mind who are neither lunatics, idiots nor affected with insanity.
>
> **Instruction No. 23**
>
> Mental illness is not a defense to any charge of criminal conduct. However, you may consider evidence of mental illness in determining whether the defendant formed criminal intent as that term is defined in these instructions. The state has the burden of proving beyond a reasonable doubt that the defendant formed criminal intent.

Review of a sentence is limited to an examination for clear abuse of the sentencing court's discretion. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). A sentence may represent a clear abuse of discretion if it is unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). Our standard of reasonableness as set forth in *Toohill* is well known and need not be repeated here. It suffices to say that ordinarily we juxtapose the nature of the offense and character of the offender, *see State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982), with the goals of protecting society, deterring criminal activity, rehabilitation of the defendant, and punishment or retribution. *See State v. Toohill, supra.* Where a defendant's mental condition is a significant factor, other factors including the prognosis for improvement or rehabilitation must be considered. I.C. § 19–2523. *See, e.g., State v. Desjarlais*, 110 Idaho 100, 714 P.2d 69 (Ct.App.1986). McDougall contends that a long, potentially punitive sentence is inappropriate and unreasonable given the unrebutted evidence regarding his mental condition on the date the crimes were committed.

The maximum sentence for aggravated battery is fifteen years. I.C. § 18–908. Aggravated assault is punishable by up to five years in prison, I.C. § 18–906. Where a sentence is within the statutory maximum, the sentence will not be disturbed unless the appellant shows a clear abuse of discretion. *State v. Toohill, supra.* As mentioned above, McDougall was given an indeterminate fifteen-year sentence for the battery and indeterminate five-year sentences for the assaults—all to run concurrently. Where a sentence is indeterminate, we ordinarily deem the duration of confinement to be one-third of the term of the sentence. *Id.* Thus, for the purpose of sentence review, we will deem McDougall's incarceration to be five years.

Apparently, this was McDougall's first criminal conviction. However, it involved a particularly serious and violent series of offenses which resulted in probably permanent injury to one victim. In mitigation, McDougall offered his unstable mental condition. Although a diminished capacity to act rationally is relevant to the determination of sentence, I.C. § 18–207(b), it does not excuse the crime. Our legislature has indicated that once the ordered treatment has been concluded, the defendant still remains responsible for the crime and may be further incarcerated. *Id.* Here, the sentencing court determined that a lengthy sentence was necessary to reflect the seriousness of the defendant's conduct and because long-term treatment might be required. The court directed that appropriate treatment be provided and expressed hope that McDougall would some day again be a valuable member of society.

Pursuant to I.C. § 18–207, treatment for a contributing mental condition is a legislature-endorsed means of rehabilitation. Although McDougall was sentenced to the maximum period allowed by law for each crime, the indeterminate and concurrent form of his sentences provides the opportunity for release at a substantially earlier date. Contrary to McDougall's assertion, once his treatment is completed, punitive incarceration is not inevitable.

The protection of society also remains a valid purpose in sentencing. Despite McDougall's claim that he had no malicious intent when he assaulted his mother or the officers, his acts were criminal in nature and suggested that McDougall might be a continuing threat to others. After an examination of the record of this action, we are convinced that the district court did not abuse its discretion.

The judgment, including each of the sentences, is affirmed.

SWANSTROM, J., concurs.

BURNETT, Judge, specially concurring.

I write separately to invite renewed scholarly attention to an old but important issue underlying this case. The issue is whether the concept of mens rea is broader than the mere intent to do a particular act.

Such a distinction was recognized at common law. "The basic premise[,] that for

criminal liability some mens rea is required[,] is expressed by the Latin maxim *actus non facit reum nisi mens sit rea* (an act does not make one guilty unless his mind is guilty)." 1 W. LaFAVE & A. SCOTT, SUBSTANTIVE CRIMINAL LAW 297 (1986) (hereinafter LaFAVE). With respect to crimes consisting of proscribed acts,[1] mens rea traditionally has been thought to mean a *criminal* intent—that is, culpability grounded in a wrongful purpose. *See generally* BLACK'S LAW DICTIONARY (5th ed. 1979). Criminal intent is more than the mere "intent" which denotes that an act is not accidental.

Despite its antiquity, mens rea is a seminal concept in modern criminal law. To illustrate, I.C. § 18–903(c) prohibits the "[a]ctual, intentional and unlawful touching or striking of another person against the will of the other...." If a person suddenly pushes another away from an oncoming motor vehicle, the act is without contemporaneous consent and it is far from accidental. But there is no crime because the act is unaccompanied by a criminal intent. Similarly, if a person genuinely entertains the delusion that a motor vehicle is about to strike another, and he pushes the other out of the way, his act is intentional but he has committed no crime because, again, his intent was not criminal.

This integration of criminal responsibility with criminal intent is so firmly rooted in our jurisprudence that in 1982, the Idaho Legislature expressly retained the concept of mens rea while generally abolishing "mental condition" as a "defense" to any charge of criminal conduct. *See* I.C. § 18–207(c).[2] Indeed, our Supreme Court has said that I.C. § 18–207(c) "continues to recognize the basic common law premise that only responsible defendants may be convicted." *State v. Beam*, 109 Idaho 616, 621, 710 P.2d 526, 531 (1985), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2260, 90 L.Ed.2d 704 (1986).

The Supreme Court's statement in *Beam* is consistent with the view that mens rea is broader than mere intent to do a particular act. It also is consistent with descriptions of mens rea by courts in other states. *E.g., Vick v. State*, 453 P.2d 342 (Alaska 1969); *Tift v. State*, 133 Ga.App. 455, 211 S.E.2d 409 (1974); *In re Michael*, 423 A.2d 1180 (R.I.1981). However, I must concede that many earlier Idaho decisions are to the contrary. Shortly after the turn of the century, our Supreme Court stated that where a crime is defined by statute, the requisite state of mind consists only of intent to do the proscribed act. *State v. Keller*, 8 Idaho 699, 70 P. 1051 (1902). Although the Court noted a possible distinction between statutes defining acts *mala prohibita* and those defining acts *mala in se*, this distinction has not been carried forward in later cases. In *State v. Gowin*, 97 Idaho 766, 767–68, 554 P.2d 944, 945–46 (1976), the Supreme Court reiterated its narrow view of mens rea, declaring that unless a statute specifically refers to a different intent, the "general criminal intent requirement is satisfied if it is shown that the defendant knowingly performed the proscribed acts...." Today's lead opinion cites other Idaho cases to the same effect.[3]

These Idaho cases seemingly depart from the general practice of incorporating the traditional concept of mens rea into such statutory terms as "intentionally," "know-

---

1. The common law concept of mens rea has diminished application to statutory crimes which consist of negligence or of failure to perform affirmative duties. My focus here is on crimes consisting of proscribed acts.

2. Idaho Code § 18–207(c) provides as follows: "Nothing herein is intended to prevent the admission of expert evidence on the issues of mens rea or any state of mind which is an element of the offense...."

3. Some Idaho cases may confuse the distinction between mens rea and intent to do a particular act with the distinction between general crimi-

nal intent and specific intent. Mens rea and intent to do a particular act are components of the general criminal intent. This general intent applies to all crimes consisting of proscribed acts. In contrast, specific intent is an additional element of proof required by certain statutes defining particular crimes. For example, I.C. § 18–4501(4), a kidnapping statute, requires the wilful seizure or detention of a person—a proscribed act committed with general criminal intent—and it further requires proof of a specific intent to extort money or property.

ingly," "purposely," "feloniously" or "unlawfully." *See* LaFAVE at 298. However, our Legislature may have assumed that this practice was extant in Idaho when it specifically mentioned the concept of mens rea in I.C. § 18–207(c), despite presumably knowing that virtually all crimes in Idaho are defined by statute. If the Legislature had perceived mens rea as nothing more than the intent to do a particular act, it is unlikely that this common law term, with its rich historical meaning, would have received express recognition in I.C. § 18–207(c).[4]

Consequently, I question the cramped view of mens rea espoused by my colleagues today. But even if mens rea were accorded its broader meaning in this case, I would be constrained to join in affirming the judgment on appeal. The jury reasonably could have inferred that McDougall's conduct (shooting one person and threaten-

ing others) was accompanied by a wrongful purpose and, therefore, a criminal intent. I realize that Dr. Lathrop testified, as noted in the lead opinion, that he did not believe McDougall harbored any criminal, wrongful or malicious intent. However, the jury was not bound by Dr. Lathrop's opinion. McDougall himself admitted knowing that he was firing upon human beings. The jury was entitled to infer a culpable state of mind from McDougall's own testimony and from other evidence of the circumstances surrounding his conduct. Accordingly, I concur in the result.

---

4. Idaho's Solicitor General, one of the most knowledgeable commentators on I.C. § 18–207, has argued cogently that the reference to mens rea did not inadvertently reinstate the abolished insanity defense. However, he acknowledges that the concept of mens rea precludes the imposition of criminal liability upon one who acts under a genuine delusion of fact. Thus, he expresses an understanding that although mens rea is not as broad as the insanity defense which existed in 1982, neither is it as narrow as the mere intent to do a particular act. L. Thomas, *Breaking the Stone Tablet: Criminal Law Without the Insanity Defense*, 19 IDAHO L.REV. 239, 251–54 (1983).