828 P.2d 879

STATE of Idaho, Plaintiff–Respondent,

v.

Kathi L. WINN, Defendant–Appellant.

No. 18786.

Supreme Court of Idaho,
Boise, September 1992 Term.

March 26, 1992.

David N. Parmenter, Blackfoot, for defendant-appellant.

Larry J. EchoHawk, Idaho Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent. Lynn E. Thomas argued.

BOYLE, Justice.

This is an appeal by defendant Kathi Winn of her conviction of first degree murder for the poisoning death of her nine-year-old son Zerick Winn. The child died from ingesting a lethal dose of Desipramine, an anti-depressant, administered to him in a cup of hot chocolate. Winn appeals her conviction, asserting error on several grounds and requests that this Court reverse her conviction.

At trial, Winn alleged she had been told by a "demon" that her son Zerick must die, and, according to the record, Winn admitted that she administered the poisoned drink to the child.

Following the filing of the information charging Winn with murder in the first degree, and prior to trial, defense counsel moved for a change of venue based on extensive news coverage and pre-trial publicity. The district court denied Winn's motion and a jury trial was held in Bingham County. The jury returned a verdict of guilty to murder in the first degree and the district court imposed a sentence of life imprisonment with a minimum of sixteen years confinement.

Taken in the order presented in appellant's brief, the following issues are before us for review.

1. Whether it was reversible error to admit Exhibit G consisting of four photographs taken of the victim laying unclothed on an autopsy table.

2. Whether the statutory repeal of I.C. §§ 18–208 and 18–209 and adoption of I.C. § 18–207(a) which provides "mental condition shall not be a defense to any charge of criminal conduct" violates the Due Process Clause of the Fourteenth Amendment and the prohibition of cruel and unusual punishment of the Eighth Amendment.

3. Whether the trial court erred in not allowing testimony from Winn's mother regarding her knowledge of Winn's physical and mental ailments.

4. Whether the trial court erred in not allowing testimony of defense witnesses regarding Winn's possession experiences and personality change as relates to criminal intent.

5. Whether the trial court abused its discretion in not granting Winn's motion for change of venue out of Bingham County.

I.

Over Winn's objection, the trial court admitted various photographs of the victim. On appeal Winn asserts that the trial court abused its discretion in admitting Exhibit G consisting of four photographs taken while the victim's body was laying on an autopsy table. Winn asserts that these four photographs were presented for the sole purpose of inflaming the passion of the jury and when considered with the other photographs admitted into evidence were cumulative.

The four photographs comprising Exhibit G show the child's body unclothed, laying supine on an autopsy table. In two of the photographs there is blood running out of his right nostril, down his cheek and onto the table. None of the photographs contained in Exhibit G show any sign of physical trauma or any changes from the prior photographs taken at the residence where the child's body was found in his bedroom.

Defense counsel objected to the admission of all photographs at trial, but on appeal challenges only the admission of the second set, or Exhibit G, photographs. Winn argues that the Exhibit G photographs were not admissible under I.R.E. 403 [1] because the prejudicial effect of the photographs outweighs any probative val-

---

1. **Rule 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.**—Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, con-fusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

ue and that they were merely cumulative of the photographs taken at the residence when the child's body was found on his bed.

It is well established that where allegedly inflammatory evidence is relevant and material as to an issue of fact, the trial court must determine whether the probative value is substantially outweighed by the danger of unfair prejudice. I.R.E. 403; *State v. Pizzuto*, 119 Idaho 742, 810 P.2d 680 (1991); *State v. Emory*, 119 Idaho 661, 809 P.2d 522 (1991); *State v. Windsor*, 110 Idaho 410, 716 P.2d 1182 (1985), *cert. denied*, 479 U.S. 964, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986); *State v. Scroggins*, 110 Idaho 380, 716 P.2d 1152 (1985); *State v. Beam*, 109 Idaho 616, 710 P.2d 526 (1985); *State v. Wilson*, 93 Idaho 194, 457 P.2d 433 (1969); *State v. Beason*, 95 Idaho 267, 506 P.2d 1340 (1973); *State v. Martinez*, 92 Idaho 183, 439 P.2d 691, *cert. denied*, 393 U.S. 945, 89 S.Ct. 317, 21 L.Ed.2d 283 (1968). "The determination of whether to admit evidence challenged on the ground that it is more prejudicial than probative is clearly within the trial court's discretion. *State v. Pizzuto*, 119 Idaho 742, 810 P.2d 680 (1991); *State v. Scroggins*, 110 Idaho 380, 716 P.2d 1152 (1985); *State v. Wilson*, 93 Idaho 194, 457 P.2d 433 (1969). The trial court has discretion to admit into evidence photographs of the victim in a homicide case as an aid to the jury in arriving at a fair understanding of the evidence, as proof of the corpus delicti, the extent of injury, the condition of the body, and for their bearing on the question of the degree and atrociousness of the crime. *State v. Pizzuto*, 119 Idaho 742, 810 P.2d 680 (1991); *State v. Beam*, 109 Idaho 616, 620, 710 P.2d 526, 530 (1985); *State v. Martinez*, 92 Idaho 183, 439 P.2d 691, *cert. denied*, 393 U.S. 945, 89 S.Ct. 317, 21 L.Ed.2d 283 (1968). The fact that the photographs depict the actual body of the victim and the wounds inflicted on the victim and may tend to excite the emotions of the jury is not a basis for excluding them. *State v. Beam*, 109 Idaho 616, 710 P.2d 526 (1985). Whether to admit allegedly inflammatory evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Windsor*, 110 Idaho 410, 716 P.2d 1182 (1985), *cert. denied*, 479 U.S. 964, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986); *State v. Abel*, 104 Idaho 865, 664 P.2d 772 (1983).

In *State v. Scroggins*, 110 Idaho 380, 716 P.2d 1152 (1985), we upheld the admission of photographs which depicted bruises and abrasions on the victim's body. Although the photographs were not used by the pathologist to assist him in describing his observations, we held that the trial court did not abuse its discretion in admitting the photographs. *See also State v. Beason*, 95 Idaho 267, 506 P.2d 1340 (1973).

In *State v. Beam*, 109 Idaho 616, 710 P.2d 526 (1985), this Court held:

> The trial court has the discretion to admit into evidence photographs of the victim in a homicide case as an aid to the jury in arriving at a fair understanding of the evidence, as proof of the *corpus delicti*, the extent of the injury, the condition of the body, and for their bearing on the question of the degree and atrociousness of the crime. The fact that the photographs depict the actual body of the victim and the wounds inflicted on her and may tend to excite the emotions of the jury is not a basis for excluding them. *State v. Caudill*, 109 Idaho 222, 706 P.2d 456 (1985); *State v. Bean*, 109 Idaho 231, 706 P.2d 1342 (1985).

*Id.*, 109 Idaho at 620–21, 710 P.2d at 530–31.

We have reviewed the four Exhibit G photographs in question and hold that it was not error nor an abuse of discretion for the trial court to admit the photographs. Accordingly, we hold that admission of Exhibit G was not reversible error.

## II.

In 1982, the Idaho legislature abolished the insanity defense in criminal cases by repealing I.C. § 18–209 and enacting I.C. § 18–207(a), which provides that "mental condition shall not be a defense to any charge of criminal conduct." Winn asserts these legislative changes violate the Due Process Clause of the Fourteenth Amend-

ment and the prohibition of cruel and unusual punishment of the Eighth Amendment. Accordingly, Winn sought a pretrial ruling from the district court on defendant's motion that such repeal was unconstitutional.

■ It is well established that the absence of an insanity defense in capital cases does not violate any constitutional protections. *State v. Card*, 121 Idaho 425, 825 P.2d 1081 (1991); *State v. Rhoades*, 121 Idaho 63, 822 P.2d 960 (1991); *State v. Searcy*, 118 Idaho 632, 798 P.2d 914 (1990). As we held in *Searcy*, "... due process as expressed in the Constitutions of the United States and of Idaho does not constitutionally mandate an insanity defense and that I.C. § 18–207 does not deprive Searcy of his due process rights under the state or federal Constitution." (citations omitted). 118 Idaho at 637, 798 P.2d at 919.

■ Furthermore, Winn's challenge does not present a justiciable controversy. At defense counsel's request in the instant case, the trial court appointed a psychologist to conduct a mental evaluation of Winn. Following completion of the mental evaluation by the psychologist, counsel for Winn advised the court that he did not intend to call the psychologist as a witness and requested that the report be sealed and protected from discovery. The district court granted Winn's request and the report was sealed.

Thereafter, without offering any evidence of the results of the psychologist's report or without making any representations that mental condition was an issue, Winn moved for a declaration that the repeal of I.C. §§ 18–208 and 18–209 and the adoption of I.C. § 18–207(a) was unconstitutional. Similar to the proceedings in *State v. Rhoades*, 121 Idaho 63, 822 P.2d 960 (1991), Winn sought a pre-trial ruling from the trial court as to the constitutionality of the legislation, but did not present any evidence or make any representation sufficient to create a justiciable controver-

sy on the issue of the insanity defense. As this Court held in *State v. Rhoades*, 121 Idaho 63, 822 P.2d 960 (1991), we herein affirm the trial court's determination that the record does not create a judiciable controversy sufficient to support a ruling on the issue of the repeal of the insanity defense.

### III.

■ Winn next asserts that the trial court erred in sustaining the State's objection to questions presented to her mother, Pat Dunavin, as to whether or not she was aware of any physical or mental ailments suffered by Winn "which affects her ability to function at times." [2] The State objected to this question on the grounds of relevance, materiality and that proper foundation had not been laid to establish that the witness was qualified to give such an opinion. The trial court sustained the State's objection and defense counsel withdrew the question. Thereafter defense counsel for Winn asked a series of questions which elicited essentially the same information that he had sought by the disallowed question. Mrs. Dunavin testified that Winn had suffered from alcohol and psychiatric problems which had impaired her ability to care for her family.

It is well established that a trial court has considerable discretion to exclude evidence for reasons of foundation, relevance, or that the question was confusing and could have been interpreted in many different ways. *Leliefeld v. Johnson*, 104 Idaho 357, 659 P.2d 111 (1983); *Flowerdew v. Warner*, 90 Idaho 164, 409 P.2d 110 (1965). It is likewise well established that the trial court also has considerable discretion to exclude evidence for those reasons. *Evans v. Twin Falls County*, 118 Idaho 210, 796 P.2d 87 (1990).

Inasmuch as counsel for Winn was able to elicit testimony that Winn suffered from problems which impaired her ability, there

---

2. The following is the question posed to Winn's mother by defense counsel.

"Q. Miss Dunavin, but—and it is—you described her as a good daughter and a good mother. Are you aware of any physical ailments suffered by Kathi, physical or mental, suffered by Kathi which affects her ability to function at times?"

was no prejudice in the trial court not allowing Mrs. Dunavin to answer the question at issue. Accordingly, we hold the trial court did not err in excluding Mrs. Dunavin's answer to whether or not Winn suffered from any physical or mental ailments which affected her ability to function at times.

### IV.

Winn asserts that the trial court erred in excluding the testimony of a pastor who had previously attended counseling sessions and observed her demeanor. The pastor, Daniel Talley, had attended counseling sessions at the request of Mrs. Winn's minister and testified that during counseling sessions Winn's facial expressions, demeanor, personality and voice changed.

Pastor Talley testified that the voice he heard at one particular session was much deeper, gruffer and rougher sounding than Winn's normal voice. Pastor Talley testified that the counseling session lasted approximately one hour and Winn's agitated condition lasted about twenty minutes. Following the agitated condition, Winn slumped into a semiconscious state and upon waking sat in her chair and cried. Several weeks later Mrs. Winn's pastor again telephoned Pastor Talley and asked him to witness another similar counseling session. Again, Pastor Talley observed a similar experience and testified at trial that they were "encountering a different personality in that room."

The State did not cross-examine Pastor Talley but moved to strike his entire testimony on relevancy, foundational and hearsay grounds. The trial court granted the motion and instructed the jury to disregard Pastor Talley's testimony. The trial court concluded that the evidence was not relevant because "it goes to a demonic possession defense. It would be something like a mental disease or defect, which we don't have anymore, or an insanity defense which we don't have anymore."

To the extent that Pastor Talley described personal observations of the defendant his testimony was properly admitted at trial. However, it was his testimony suggesting "demonic possession" which was excluded by the trial court. The witness was allowed to testify and describe personal observations, however, any conclusions as to the cause of Winn's condition was excluded. In this there is no error.

Idaho Rules of Evidence 401 defines relevant evidence as any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rule 402 states the general rule that all relevant evidence is admissible.

The admissibility of expert opinion testimony and the admission of scientific evidence are governed by the Idaho Rules of Evidence and the decisions of this Court. In *IHC Hosp. v. Board of Commrs.*, 108 Idaho 136, 697 P.2d 1150 (1985), we held that a witness must be properly qualified as an expert prior to being allowed to give expert testimony. Whether a witness is sufficiently qualified as an expert is a matter largely within the sound discretion of the trial court. *State v. Crea*, 119 Idaho 352, 806 P.2d 445 (1991); *Sidwell v. William Prym, Inc.*, 112 Idaho 76, 730 P.2d 996 (1986). The admissibility of expert opinion testimony is discretionary with the trial court and will not be abused absent a showing of an abuse of discretion. *State v. Crea*, 119 Idaho 352, 806 P.2d 445 (1991); *Sidwell v. William Prym, Inc.*, 112 Idaho 76, 730 P.2d 996 (1986).

It is also well established that acceptance of the reliability of a scientific theory is a prerequisite to the admission of evidence based upon the theory. *State v. Horsley*, 117 Idaho 920, 792 P.2d 945 (1990). A careful review of the record reveals that Pastor Talley was not qualified as an expert on mental status or condition and was not testifying as an expert by knowledge, skill, training or education. Although he asserted he was qualified by "practical experience," Pastor Talley was not qualified to testify or give opinions about mental state or condition beyond his expertise or competence. *Evans v. Twin Falls County*, 118 Idaho 210, 796 P.2d 87

**856**

(1990). Consequently, it was not error for the trial court to exclude from evidence those portions of Pastor Talley's testimony dealing with "demonic possession" or a scientific theory for which adequate foundation had not been laid or expertise established.

## V.

Winn also asserts that the trial court erred in refusing to grant a change of trial venue because of news media coverage and pretrial publicity.

■■■ A careful review of the record indicates, and Winn concedes, that the district court experienced no difficulty in selecting a jury and Winn did not challenge any juror for cause. It is well established that error cannot be predicated on the mere existence of pretrial publicity concerning a criminal case, and that the validity of a court's decision to try a case in a particular venue is tested by whether, in the totality of existing circumstances, juror exposure to pretrial publicity resulted in a trial that was not fundamentally fair. *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975).

In Idaho, a motion for a change of venue is addressed to the sound discretion of the trial court. *State v. Leavitt*, 116 Idaho 285, 775 P.2d 599 (1989); *State v. Needs*, 99 Idaho 883, 591 P.2d 130 (1979); *State v. Powers*, 96 Idaho 833, 537 P.2d 1369 (1975); *State v. Thomas*, 94 Idaho 430, 489 P.2d 1310 (1971); *State v. Cypher*, 92 Idaho 159, 438 P.2d 904 (1968). We have identified several factors to be considered in the process of evaluating the exercise of discretion by a trial court when it decides to grant or deny a motion for a change of venue.

[A]ffidavits indicating prejudice or an absence of prejudice in the community where the defendant was tried, testimony of the jurors at voir dire as to whether they had formed an opinion of the defendant's guilt or innocence based upon adverse pretrial publicity, whether the defendant challenged for cause any of the jurors finally selected, the nature and content of the pretrial publicity, and

the amount of time elapsed from the time of the pretrial publicity to the trial itself. Publicity by itself does not require a change of venue.

*State v. Needs*, 99 Idaho at 890, 591 P.2d at 137 (citations omitted).

■■ The defendant did not challenge for cause any juror seated which, we have held, indicates "satisfaction with the jury as finally constituted." *State v. Bitz*, 93 Idaho 239, 243, 460 P.2d 374, 378 (1969); *see also State v. Needs*, 99 Idaho 883, 591 P.2d 130 (1979). The record clearly demonstrates that none of the jurors seated had formed an opinion of the defendant's guilt or innocence based on pretrial publicity. Accordingly, Winn "has failed to show that the setting of the trial was inherently prejudicial or that the jury-selection process of which [she] complains permits an inference of actual prejudice." *Murphy v. Florida*, 421 U.S. at 803; 95 S.Ct. at 2038; 44 L.Ed.2d at 496–97.

■■ In order to demonstrate a violation of the constitutional protections relevant to change of venue issues, Winn must direct our attention and inquiry to some specific indication in the voir dire examination that members of the jury panel could not judge her fairly. *State v. Cypher*, 92 Idaho 159, 438 P.2d 904 (1968). The record demonstrates that Winn presents only conclusory arguments that the jury was not impartial merely because the case received extensive local news media coverage and publicity in advance of trial. Winn has not directed our attention to any part of the record that demonstrates that the case was tried in an atmosphere so inflamed by publicity that indicia of juror impartiality developed in the voir dire examination should be disregarded. *See Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Accordingly, we hold that the trial court did not err in denying Winn's motion for change of venue.

## VI.

In conclusion, we hold that the trial court did not abuse its discretion in admitting the

Exhibit G photographs into evidence. Further, Winn's assertion of error on the evidentiary issues is without merit and the trial court did not err in excluding certain portions of Mrs. Dunavin's and Pastor Talley's testimony. Finally, we hold that the trial court did not err in denying Winn's motion for change of venue.

Judgment of conviction affirmed.

BAKES, C.J., and JOHNSON and McDEVITT, JJ. concur.

BISTLINE, Justice, dissenting.

Being unable to join the majority's opinion in this case because of the district court's error in admitting unduly prejudicial evidence against Winn while excluding relevant evidence which favored her, my reasons will be further explained.

I

The prosecution offered and the court admitted a set of six photographs of Zerick's body as it appeared when he was seen by the paramedics. The photographs showed the deceased Zerick on his bed, shirtless, but wearing a pair of black pants. His skin has large purple blotches, a change known as livor mortis, which begins about twenty minutes after death and is complete within three to four hours. Four of the photographs show him in a prone position, one being a close-up of his left profile. For the final photograph he had been turned over onto his stomach. There are no signs of trauma.

The State later sought to admit photographs taken of Zerick while the autopsy was taking place. These photographs all show a naked corpse lying on an autopsy table. Two of the photographs show blood running out of Zerick's right nostril down his face and onto the table. As with the first set, these photographs do not show any signs of trauma. There is no difference in the amount of skin discoloration.

The doctor who performed the autopsy stated at trial that the second set of photographs was unnecessary:

Q. Dr. Garrison, the photographs contained in State's Exhibit G, are those necessary for your explanation as to how this autopsy was performed?

A. I don't believe so.

Notwithstanding the doctor's testimony and over defense counsel's objection, the photographs were admitted in evidence and submitted to the view of the jurors. The purported basis for the introduction of the photographs was the prosecution's argument that the second set of photographs was relevant to prove the identity of the victim and to show the condition of the home. Counsel for appellant's response was that the identity of the victim was not at all in dispute, that the defense would stipulate that the autopsy was performed upon Zerick, and that the second set of photos did not show the condition of the home, having been taken at the hospital where the autopsy was performed. The prosecutor did not challenge that assertion. Instead, so the prosecutor argued, the photographs were relevant for the purpose of showing there were no other possible causes of death. The court overruled the defense objection and ruled that the photographs would be admitted. The defense again objected, this time specifically to the photographs which showed blood coming out of the child's nostril. The prosecutor stated that the photograph was needed "to explain that condition and how it relates to the boy's death." The court again overruled the appellant's objection.

During the direct examination concerning the photographs, the prosecutor asked the doctor who had conducted the autopsy whether the presence of blood on the child's face indicated a particular cause of death. The doctor replied that it did not indicate a particular cause of death, and that "It occurs in drowning. It occurs in a variety of things. And you can simply say that it's a secondary effect of the cause of death, but can't directly relate it to a specific cause."

The general evidentiary rule in this area is I.R.E. 403 which states:

**Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.**—Although relevant, evidence may be excluded if its probative

value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.[3]

The State nevertheless continues to argue that the photographs were relevant to assist the pathologist in explaining that the body bore no signs of trauma, but did exhibit signs consistent with poisoning, and that the photos were also offered to respond to appellant's contention that she was a devoted mother who loved her child. The State's theory was based on supposition that no loving mother would allow her child to live in the appellant's supposedly dirty, disheveled house.

However, these arguments fall short of the intended goal. First, because the photographs were not relevant to refute a potential "loving mother" argument. They were not taken at home, but rather during the autopsy, and simply did not depict the condition of the home. Only the first set of photographs admitted were taken inside the home.

The State argues in this Court that the photographs would be of aid in establishing that Zerick's death was caused by poisoning, and not by trauma. However, this was not a matter in dispute. Nor could it have been given the admission Ms. Winn made to the police. The testimony of the pathologist to the cause of death was undisputed. Further, the State was aware that the defense did not have the services of an expert witness who would be contradicting the testimony of the pathologist. Accordingly, there was no genuine need for the State to introduce the photographs in order to prove that Zerick's death was not caused by trauma. Had the cause of death been contested, the pathologist's undisputed testimony sufficiently established the

cause of death and the second set of photographs was unneeded embellishment.

Given the fact that the pathologist frankly admitted that the photographs were not needed to explain his testimony, it is readily seen that the only part played by them was to inflame the passions of the jury. Further, the deputy coroner who examined Zerick at the Winn home testified he could not determine the cause of death by Zerick's appearance.

Even conceding *arguendo* that the second set of photographs had some slight probative value, such was merely cumulative to the first set of photographs. Idaho Rules of Evidence 403 also permits the trial court to exclude evidence which is "needlessly cumulative;" the second set of photographs was needlessly cumulative. They added nothing of relevance not already depicted by the first set of photographs. Where the second set of photographs showed there was no trauma, it was merely cumulative of the first set of photographs and the testimony of the coroner and deputy coroner. There was no justification for the needless accumulation and admission of all four of the photographs in the exhibit when one would have sufficed.

Third, the prejudicial effect of the photographs substantially outweighed the virtually non-existent probative value of the photographs. This was a highly emotional case because of the age of the victim. Both sides conceded that there was a significant amount of public attention when Zerick died. Three potential jurors were excused for cause because they felt they could not serve on the jury because the case involved the killing of a small child. The fact that Zerick was just nine years old increased the prejudicial effect of the photographs.

The absence of any relevant purpose for the photographs distinguishes this case

---

**3.** In an interesting and well-reasoned law review article, Professor D. Craig Lewis of the University of Idaho argues that the current I.R.E. 403 balancing test (evidence is not excluded unless the prejudicial effect substantially outweighs the probative value) does not comport with the constitutionally mandated reasonable doubt standard. The test, according to Professor Lewis, should be reversed in criminal cases, so that evidence would be excluded unless its probative value substantially outweighs its prejudicial effect. Lewis, *Proof and Prejudice: A Constitutional Challenge to the Treatment of Prejudicial Evidence in Federal Criminal Cases,* 64 Wash.L.Rev. 289 (1989).

from those homicide cases where this Court has upheld the admission of gruesome photographs. In those cases the evidence has always been found to be relevant to a material issue at trial. *See, e.g., State v. Leavitt,* 116 Idaho 285, 290–91, 775 P.2d 599, 604–05 (1989) (photographs showed nature of fatal injuries which aided the state in establishing the premeditation element of offense), *State v. Beam,* 109 Idaho 616, 620–21, 710 P.2d 526, 530–31 (1985) (same), *State v. Fetterly,* 109 Idaho 766, 772, 710 P.2d 1202, 1208 (1985), *cert. denied* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986) (same), *State v. Caudill,* 109 Idaho 222, 227–28, 706 P.2d 456, 461–62 (1985) (photographs used to impeach defendant's testimony which differed from his previous out of court admissions) *State v. Needs,* 99 Idaho 883, 891–92, 591 P.2d 130, 138–39 (1979) (photograph of victim needed to establish identity of victim), *State v. Martinez,* 92 Idaho 183, 188, 439 P.2d 691, 696 *cert. denied,* 393 U.S. 945, 89 S.Ct. 317, 21 L.Ed.2d 283 (1968) (same as *Leavitt* ).

The trial court erred in allowing the admission of cumulative, highly prejudicial photos of Zerick which could only serve the purpose of inflaming the emotions of the jury against Ms. Winn while at the same time not serving a single solitary relevant purpose.

## II

At trial, appellant called Daniel Talley to testify. Pastor Talley was the minister at the Faith Christian Center in Blackfoot. He was acquainted with the Winns through their minister, Brian Harrison. Pastor Harrison called Pastor Talley in March of 1988 and asked him to witness and assist in a counseling session with the Winns. Excerpts of Pastor Talley's testimony are presented below.

> We began simply with a time of prayer. Praying for Kathi. Praying for Ron [Winn], as well. Praying that God would reveal to us the nature of the problems that were evident in Kathi's life. At that time, after a period of prayer, and I cannot tell you how long that period of prayer was. But after a period of pray-

er, there was a definite change in Kathi's whole demeanor. Her facial expressions changed. Her personality changed. Her voice inflection changed....

> When we began the prayer time, Kathi was very quiet. And subdued. Somewhat withdrawn. After the change occurred, she was obviously agitated. Facial expressions, anger was—was—you could see anger. And the eyes—there was expression of anger coming from the eyes. The voice was gruff and harsh in the things that were said.

Pastor Talley went on to testify that the voice he heard that day was much deeper, gruffer and rougher sounding than Ms. Winn's normal voice. He testified the counseling session lasted about an hour and Ms. Winn's agitated condition lasted about twenty minutes. She then "slumped into a semi conscious state, and after a few moments, came to herself." When Kathi awoke she "sat there and cried."

Several weeks later, Pastor Harrison telephoned Pastor Talley and asked him to come over to witness another similar event. Again, Ms. Winn was in an agitated condition, her voice had changed and she was angry.

The State did not cross-examine Pastor Talley, but moved to strike his entire testimony on relevancy grounds. The district court granted the motion stating that the evidence was not relevant because "[it] goes to a demonic possession defense. It would be something like a mental disease or defect, which we don't have anymore, or an insanity defense which we don't have anymore." The district court instructed the jury to disregard all of Pastor Talley's testimony.

It is argued on behalf of the defendant that such evidence *was* relevant to her state of mind at the time of the offense, and that it was up to the jury to decide whether the evidence was sufficient to raise a reasonable doubt whether Ms. Winn acted with a *mens rea* state of mind which is necessary for a verdict of first degree murder. Moreover, in light of the court's ruling, defense counsel made an offer of proof, *i.e.,* that if admitted by the court,

860

Pastor Harrison would testify to the same change in Ms. Winn's demeanor that Pastor Talley witnessed. Pastor Harrison would also have testified he witnessed this change occur two other times. Based on these observations, Pastor Harrison advised Ms. Winn that she was possessed by demons. Ronald Winn would testify, if allowed, to the same facts as Pastor Harrison and would testify about the occurrence three weeks before the incident that was brought out by the State in direct examination. The striking of all of Pastor Talley's testimony was error.

Even though a defendant cannot bring forth insanity as a complete defense to a crime, nothing stands in the way of introducing relevant evidence, "... on the issue of *mens rea* or any state of mind which is an element of the offense." *State v. Potter*, 109 Idaho 967, 712 P.2d 668 (Ct.App. 1985). Idaho Code § 18–207 still allows a defendant to present evidence of a mental condition so as to negate criminal intent.

> Although eliminating affirmative defenses based upon the defendant's metal condition, the statute does not relieve the state of its burden of proving beyond a reasonable doubt every fact necessary to constitute the crime charged.

*State v. McDougall*, 113 Idaho 900, 902, 749 P.2d 1025, 1027 (1988). In short, I.C. § 18–207(c) "continues to recognize the basic common law premise that only responsible defendants may be convicted." *State v. Beam*, 109 Idaho 616, 621, 710 P.2d 526, 531 (1985), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2260, 90 L.Ed.2d 704 (1986).

Here, by reason of its charging decision, the State was required to prove beyond a reasonable doubt that Kathi Winn committed murder (defined as the unlawful killing of a human being with "malice aforethought," I.C. § 18–4001) which was either "by means of poison" or "wilful, deliberate and premeditated." I.C. § 18–4003(a).

In not allowing the appellant to put forth evidence of her state of mind, the district court deprived her of a defense that is capable of negating the mental elements required to prove first degree murder. The jury, if it had heard all the proffered evidence, could have concluded that the prosecution did not prove the element of "malice aforethought" beyond a reasonable doubt if the jury believed and found Ms. Winn was acting irrationally. There was ample evidence from which the jury could have concluded that Kathi Winn was not playing charades in demonstrating an unsoundness of mind. Above all, what has to be kept firmly in mind, the prosecution could not, and did not, establish any reason, let alone *motive* why she poisoned her own nine-year old son.

The jury was instructed by the trial court that it could find the element of malice aforethought if the "evidence manifests or shows the unlawful and deliberate intention to kill or take away the life of a human being without just cause or excuse." The word "deliberate" was not defined for the jury, but means:

> 1: characterized by or resulting from unhurried, careful, thorough, and cool calculation and consideration of effects and consequences ... 2: characterized by presumed or real awareness of the implications or consequences of one's actions or sayings or by fully conscious often wilful intent.... DELIBERATE always indicates full awareness of what one is doing and, used precisely, implies careful and unhurried consideration of procedures and consequences.

Webster's Third New International Dictionary (Unabridged) pg. 596 (Merriam–Webster 1967). It was Ms. Winn's defense that she was not fully aware of what she was doing because she was under the influence of a demonic spirit when she gave Zerick the hot chocolate. Whether one labels the evidence as showing demonic possession or psychosis, the jury could have found that Ms. Winn did not act deliberately because of her mental state.

In a situation analogous to the one at bar, this Court long ago held that evidence of intoxication is admissible in murder trial for the purpose of negating the malice aforethought element. *State v. Sprouse*, 63 Idaho 166, 170, 118 P.2d 378, 379 (1941). Likewise here, the evidence of Ms. Winn's impaired reasoning ability was relevant to

the issue of whether the State had carried its burden of proving that Ms. Winn acted with malice aforethought beyond a reasonable doubt.

The exclusion of the proffered evidence violated her sixth amendment right to present evidence in her defense. In *Washington v. Texas*, 388 U.S. 14, 23, 87 S.Ct. 1920, 1922, 18 L.Ed.2d 1019 (1967), the High Court wrote:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

In this case, the district court deprived Ms. Winn of any defense by striking all of the testimony which related to her mental state defense. It is clear from the opening statement that Ms. Winn's entire theory of the case was that she did not have the requisite mental state to commit first degree murder.

> [L]adies and gentlemen, after you've heard all the evidence the State has to present, I think that you'll entertain a reasonable doubt as to what Kathi Winn's mental state was on the evening of May 11th, 1989. And in light of that, you will not be able to find defendant guilty Kathi Winn guilty of murder.

As with any constitutional right, the right to present evidence has its limits. That right may be counterbalanced by the State's interest in seeing that the evidence is not so prejudicial as to disrupt the fairness of the trial's truth finding function. For example, the supreme court of Washington has held that the state must show a

compelling reason before a defendant's relevant evidence can be excluded, *State v. Hudlow*, 99 Wash.2d 1, 523, 659 P.2d 514, 523 (1983), *see also People v. Redmon*, 112 Mich.App. 246, 315 N.W.2d 909 (1982), but held that the state interests behind it's rape shield law was a compelling interest. Here, the only basis the State sought to exclude the evidence upon was relevancy which should be rejected for the reasons above. There is no claim by the prosecutor of an independent state interest which requires the exclusion of the evidence.

In sum, the evidence was relevant and it would not have unfairly prejudiced the state. Striking the testimony was clear error.

### III

The district court erred when it excluded the evidence proffered by the defense from Pastor Talley, Pastor Harrison and Ronald Winn. The evidence was relevant to the issue of Ms. Winn's mental state at the time of the offense. Striking the testimony deprived Ms. Winn of her constitutional right to present a defense.

The standard for determining whether error of constitutional dimension is harmless is set forth in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. at 828. *Accord State v. LePage*, 102 Idaho 387, 393, 630 P.2d 674, 680 (1981).

Here, the jury was only allowed to hear one side of the story—the State's version. Even so, a glaring weakness in the State's case is its lack of evidence as to any motive.[4] There is no evidence that Zerick was a problem child or that Ms. Winn disliked the boy for some reason. To the contrary, it appears that Zerick was a good boy, well-liked, who did well at school. There was no evidence that Ms. Winn stood to gain

---

4. The jury was instructed on motive as follows: Motive is not an element of the crime and need not be shown. However, you may consider motive or lack of motive as a circumstance in this case. Presence of motive may tend to establish guilt. Absence of motive may tend to establish innocence. You will therefore give its presence or absence, as the case may be, the weight to which you find it to be entitled.

financially from Zerick's death. Presumably, if there was a life insurance policy on the boy, the State would have presented that evidence. There is no evidence that Ms. Winn wanted to be free of family responsibilities. She had three other children living at home who were all left unharmed on that night. The total lack of any evidence establishing a motive undermines the State's theory that the killing was done with malice aforethought, the absence of which was Ms. Winn's defense. Given the above, no one could be convinced beyond a reasonable doubt that the verdict would have been the same if the jury had been allowed to consider Ms. Winn's defense.

The trial court additionally erred in admitting the autopsy photographs, also wholly without probative value while yet being highly prejudicial. Such photographs did not assist the State in proving the cause of death because that was not at issue. Even if the cause of death had been disputed, it was sufficiently established by the pathologist's testimony along with the first set of photographs. The pathologist admitted the photographs were not needed to explain his testimony. Further the deputy coroner who examined Zerick at the Winn home testified he could not determine the cause of death by Zerick's appearance.

Even assuming *arguendo* the photographs had some probative value, they were merely cumulative of the first set of photographs. I.R.E. 403 also permits the trial court to exclude evidence which is needlessly cumulative. These photographs were needlessly cumulative. They added nothing of relevance not already depicted by the first set of photographs. To the extent they showed there was no trauma, they were merely cumulative of the first set of photographs and the testimony of the coroner and the deputy coroner. Such an unneeded accumulation was compounded by the court in admitting all four of the photographs in the exhibit.

The conviction should be reversed and the cause remanded for a new trial.