712 P.2d 668

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Larry Gene POTTER,
Defendant-Appellant.**

**No. 15656.**

Court of Appeals of Idaho.

Dec. 11, 1985.

Larry Gene Potter, pro se.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

A jury found Larry Gene Potter guilty of two counts of robbery and two counts of the use of a firearm in the commission of a felony. Potter was sentenced to two concurrent, indeterminate life terms for the robberies. No additional sentence was imposed by the trial judge for the use of a firearm. On appeal, Potter contends that the trial court erred: (1) when it failed to hold a competency hearing prior to trial; (2) in failing to recognize Potter was incompetent prior to and during the trial; (3) in denying Potter the right to present the defense of insanity; (4) in instructing the jury on the intent required to commit the crime charged; (5) in removing Potter from the courtroom; (6) in denying Potter effective assistance of counsel; (7) in denying Potter a fair presentence report; and (8) in imposing sentences which are both arbitrary and capricious and constitute cruel and unusual punishment. We affirm the judgments of conviction, including the sentences.

The robberies occurred at night in two Boise bars on April 19, 1983. While at the first establishment, Potter called a taxicab and requested the driver to remain in the parking lot. According to witnesses, Potter returned to the bar and threatened the bartender with a gun and demanded money. Potter fled to the waiting cab and requested to be driven to another bar. Ac-

cording to the driver of the cab, Potter gave him money and told him to keep quiet. The driver immediately reported the robbery to the police after leaving Potter. Meanwhile, Potter repeated his actions at the second bar. According to the bartender and cocktail waitress, he threatened them with a gun and demanded money. Again Potter fled to a waiting cab and was dropped off at another bar. Based on a description of the robber given by the victims, Potter was arrested the same evening at a bus station. It was discovered that the gun Potter displayed during the crimes was not loaded.

Prior to Potter's preliminary hearing, the magistrate ordered that Potter be evaluated to determine whether he was competent to stand trial and to assist in his own defense. On June 13, 1983, the court received a report from a psychologist stating that Potter did not presently appear to be competent to stand trial, although a more definite prognosis could be reached at a later date. The psychologist also noted there was a possibility that Potter was feigning or malingering. On August 4, the court received a subsequent evaluation of Potter from a psychiatrist. The report stated that Potter suffered from chronic schizophrenic illness but was no longer actively psychotic and had the capacity to understand the proceedings and to assist in his own defense. On September 9, the magistrate found Potter to be competent to proceed. The record shows that neither the state nor the defendant requested an opportunity to cross-examine either of the two evaluators. Potter did file his own motion for a third evaluation. The magistrate denied the motion and conducted a preliminary hearing. Potter was then held to answer all charges in the district court.

On November 2, the district court ordered a mental evaluation to determine whether Potter was fit to proceed to trial. The arraignment was continued until the report of this evaluation was received by Potter's counsel in November. This report contained the examiner's opinion that Potter was competent to stand trial. On December 6 Potter again appeared in district court with his counsel and entered a not guilty plea to all counts. The trial was then set to commence on February 29, 1984, without objection by Potter or his counsel at this time. On March 2, the jury found Potter guilty on two counts of robbery and two counts of using a firearm during a robbery and not guilty on two counts of aggravated assault.

■ Potter first contends that the trial court erred in failing to hold a competency hearing prior to trial. From the record it is clear that Potter was evaluated twice prior to his preliminary hearing and once prior to trial.

Idaho Code § 18–210 states:

> No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted, sentenced or punished for the commission of an offense so long as such incapacity endures.

The issue of a defendant's fitness to proceed is determined by the court. I.C. § 18–212. Accordingly, a trial judge is under a continuing duty to observe a defendant's ability to understand the proceedings against him. Idaho Code § 18–211 requires that "[w]henever there is reason to doubt the defendant's fitness to proceed as set forth in section 18–210 ... the court shall appoint at least one (1) qualified psychiatrist or licensed psychologist ... to examine and report upon the mental condition of the defendant to assist counsel with defense or understand the proceedings." Even under this statutory requirement some degree of discretion is permitted in determining whether reasonable grounds exist to require an examination. *See, e.g., State v. Roper*, 140 Ariz. 459, 682 P.2d 464 (App.1984).

Potter's competency to stand trial had been reviewed and determined at the magistrate level. A prior determination is not conclusive but "the trial court may consider such examinations, particularly when recently made...." *State v. Bishop*, 137 Ariz. 5, 667 P.2d 1331, 1334 (App.1983). At

defense counsel's request the district judge ordered another evaluation made by yet a third examiner. The report of this examination, like the previous one, showed that Potter was competent to stand trial. No request was made for a hearing by Potter or his counsel following receipt of this report. A final determination of competency entered during the pretrial phase of a case should have some legal significance to pending and as yet unresolved proceedings. *People v. Mack*, 638 P.2d 257 (Colo.1981). There is no reason why a second mental evaluation should have been conducted by the district court, without facts in the record showing Potter's mental condition had changed since the previous evaluation. *See People v. Sephus*, 46 Ill.2d 130, 262 N.E.2d 914 (1970); *State v. Drayton*, 270 S.C. 582, 243 S.E.2d 458 (1978); *Cosco v. State*, 503 P.2d 1403 (Wyo.1972), *cert. denied*, 411 U.S. 971, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973). No error has been shown in the failure of the trial court to conduct such a hearing on its own initiative.

■ This leads us to Potter's second assertion that he was actually incompetent to stand trial. In support of his assertion, Potter states that before trial he was observed to have toilet paper stuck in his ears and contends that he was hearing voices. To determine whether Potter was competent to stand trial, we must consider whether he was capable of understanding the proceedings and assisting in his defense. *State v. Powers*, 96 Idaho 833, 537 P.2d 1369 (1975), *cert. denied*, 423 U.S. 1089, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976). We have no information before us supporting Potter's assertion that he was unable to confer with counsel, to understand the trial proceedings or to assist in his defense. The trial transcript and record do not even suggest Potter was so incompetent as to be unable to stand trial. During the course of the trial, the trial judge spoke with Potter concerning Potter's ability to control himself. Potter spoke coherently and demonstrated an awareness of the proceedings. Neither Potter nor his counsel requested a judicial determination of competency by the

trial court. Further, nothing in the record suggests Potter's condition had significantly deteriorated since the pretrial evaluations. Under these conditions, we find that the evidence supports the magistrate's finding of competency and that the trial court's failure to order further medical evaluations and to find Potter incompetent was not error.

■ The final chapter regarding Potter's competency commenced shortly after trial when his counsel asked that sentencing be expedited because of Potter's apparently deteriorating mental condition. A psychologist who had examined Potter before the preliminary hearing reported on his latest examination. Hearings were conducted in the absence of Potter but his counsel had the opportunity to examine the psychologist. As a result of these hearings the district court found Potter to be dangerous and not competent to understand and to proceed with sentencing. He was ordered committed to a secure medical facility for further evaluation and treatment. Four months later, at defense counsel's request a "formal" competency hearing was conducted. Potter was present at the hearing, although confined to a nearby video room where he could communicate with his counsel and view the proceedings. Potter's counsel called witnesses, including a psychiatrist. At the conclusion of this hearing the court found that Potter was competent for sentencing. A few days later a sentencing hearing was conducted. Potter was also confined to the video room at this time but he could communicate with his attorney and had the opportunity to speak to the court. We have examined the record concerning Potter's competency throughout these proceedings. We hold that, in spite of some evidence to the contrary, there was sufficient, competent evidence for the court to find that Potter had the capacity to understand the proceedings against him and to assist his counsel in his defense and at sentencing.

Potter further asserts that the trial court erred in denying him the right to present

an insanity defense. By statute a "[m]ental condition shall not be a defense to any charge of , criminal conduct." I.C. § 18–207(a). Subsection (c) makes it clear that nothing in the statute "is intended to prevent the admission of expert evidence on the issues of mens rea or any state of mind which is an element of the offense, subject to the rules of evidence." Potter did not challenge this statute in the trial court. Nor has he contended that the instructions deprived him of any right afforded by the statute. Therefore, we will not further address the statute on appeal. *State v. Major,* 105 Idaho 4, 665 P.2d 703 (1983).

■ Potter does contend that the instructions setting forth the intent elements of the crime of robbery were confusing to the jury. Potter again asserts that the jury should have been instructed that they could find him not guilty by reason of insanity. At this point we make a distinction between a defense based on insanity, which is no longer applicable in Idaho, and a defense based on the fact that the defendant did not have the appropriate state of mind or intent to commit the crime charged. At trial Potter's counsel called various medical experts to testify to Potter's mental condition in an effort to show Potter did not have the requisite intent.

We have reviewed the jury instructions and find that they clearly set out the specific intent required for the crime of robbery. The jury was further instructed that they could find, after taking all the evidence into consideration, that at the time the alleged crime was committed Potter was suffering from a mental condition which prevented him from forming the specific intent. Viewing the court's instructions as a whole, we find that they fairly and accurately presented the issue of intent and stated the applicable law correctly. Potter's asserted mental condition and its effect on the crime charged was sufficiently explained to the jury. Therefore, no error was committed.

■ Potter also contends that the trial court erred in removing him from the courtroom during his counsel's closing ar-

gument. The trial transcript indicates that Potter became disruptive and verbally abusive at this point. The transcript discloses that the trial judge had warned Potter, at the beginning of the trial and subsequently during the trial, that if he became disruptive he would be removed from the courtroom. After his removal from the courtroom, Potter was placed in a room, where if he chose to, he could view the proceedings on closed-circuit television. Potter also had access to a telephone through which he could communicate with his counsel and the court.

It is well-established that a trial judge may remove a defendant from the courtroom when he has become disruptive. *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). *See also* ABA STANDARDS FOR CRIMINAL JUSTICE § 6–3.8 (1980). A defendant waives his right to be present at trial by his "obstreperous courtroom conduct." *State v. Carver,* 94 Idaho 677, 680, 496 P.2d 676, 679 (1972). As we have noted, Potter was also absent from the courtroom during the competency and sentencing hearings. Potter could nevertheless view the proceedings and communicate with his counsel and the court. In addition, at the sentencing hearing the trial judge gave Potter the opportunity to speak to the court. Potter refused this opportunity. We find that the record is devoid of any indication that the trial court abused its power in removing Potter from the courtroom.

■ Potter next asserts that he was denied the effective assistance of counsel. The right to counsel embodied in the sixth amendment to the United States Constitution and in article one, section thirteen of the Idaho Constitution contemplates the reasonably competent assistance of a diligent, conscientious advocate. *State v. McCabe,* 101 Idaho 727, 620 P.2d 300 (1980); *Reeves v. State,* 105 Idaho 844, 673 P.2d 444 (Ct.App.1983). Potter has not challenged the effectiveness of trial counsel in any particular respect. We note that during the pretrial procedures Potter sought to have his public defender removed

from his case due to animosity between them. The record indicates no further action on the motion was taken. However, the jury trial was conducted with a different public defender and a member of a private law firm. The record before us simply provides no basis to determine that Potter's counsel was ineffective. Bare assertions and speculations unsupported by specific facts are insufficient to show ineffective counsel. *State v. Kelling*, 108 Idaho 716, 701 P.2d 664 (Ct.App.1985). We conclude that Potter has not established a right to relief based upon ineffective assistance of counsel.

■ Potter further contends that he was denied a fair presentence report. In support of this assertion, Potter asserts that when the presentence investigator attempted twice to interview him he refused to participate because he was hearing voices and felt he was being spied on. We find this argument to be completely without merit. Potter was uncooperative with the presentence investigator; therefore, he cannot now claim that the deficiencies in the report precluded the trial court from sentencing him. *See State v. Bylama*, 103 Idaho 472, 649 P.2d 1228 (Ct.App.1982). As noted earlier, sentencing did not occur until Potter was found competent to proceed.

■ Potter's final point is that his two indeterminate life sentences represent an abuse of discretion by the trial judge and constitute cruel and unusual punishment. In support of this contention, Potter refers to his chronic mental condition. It has long been established that a sentence within statutory limits normally is not cruel and unusual punishment. *Watkins v. State*, 101 Idaho 758, 620 P.2d 792 (1980). Potter could have been sentenced to a maximum term of fixed life imprisonment for each robbery charge. I.C. § 18–6503. Potter's concurrent, indeterminate life sentences were within the statutory limits.

■ We now turn to Potter's contention that the trial court abused its discretion in imposing the sentences. When weighing the reasonableness of a sentence, an examination of the record focuses upon the nature of the offenses, already described, and upon the character of the offender. Concerning Potter's character, the record discloses that he has been diagnosed as having a schizophrenic illness presently in remission. He was further diagnosed as having a personality disorder with predominantly antisocial features. A psychiatrist testified that in his opinion Potter's criminal conduct was linked to his personality disorder rather than to his schizophrenic illness. Potter has been institutionalized for most of his adult life. He has an extensive record of prior convictions including one prior robbery.

The trial judge considered various factors, determining that there was a very high likelihood that Potter would commit another crime. He considered Potter to be in need of correctional treatment and also believed that a lesser sentence would depreciate the seriousness of Potter's crime. He stated that he felt punishment was necessary to deter Potter from committing other crimes. The judge recognized that robbery was a serious crime, noting that the victims were unaware that the gun was not loaded. The trial judge acknowledged that Potter suffers from a mental illness and recommended that he be kept at the security medical facility at Idaho State Correctional Institution. The judge concluded that he could not predict in terms of years when Potter would be able to be released from confinement.

Having reviewed the full record, and having considered the sentence review criteria set forth in *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982), we conclude that the sentence did not represent an abuse of discretion. We have reviewed the remaining issues raised by Potter and find them to be without merit. The judgments of conviction are affirmed.

WALTERS, C.J., and BURNETT, J., concur.