IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38825

| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 559 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: July 20, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| BRANDON LEIGH DAY, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Joel E. Tingey, District Judge.

Judgment of conviction and unified sentence of fifteen years, with a minimum period of confinement of five years, for robbery, affirmed.

Sara B. Thomas, State Appellate Public Defender; Elizabeth Ann Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Brandon Leigh Day appeals from the district court's judgment of conviction and sentence for the crime of robbery, Idaho Code § 18-6501.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 2, 2010, a masked man entered an insurance office, pulled out a large knife, and demanded money. The owner of the insurance company, Russell Johnson, complied by giving the man $290.00, which consisted of two one-hundred-dollar bills, a fifty-dollar bill, and two twenty-dollar bills. The man then fled on foot. Johnson attempted to call 9-1-1 on a cordless phone as he followed the man outside. Johnson's phone would not connect, so Johnson stopped Charles Hooker, who was in a nearby car, and asked him to call 9-1-1. Hooker did so and both Hooker and Johnson followed the individual Johnson had identified as the suspect; they

1

both watched as the man ran into an apartment building. Neither Johnson nor Hooker saw anyone else on the street during the time they followed the suspect into the apartment building.

Law enforcement arrived within minutes of the suspect entering the apartment building and officers proceeded to set up a perimeter around the building. Some officers entered to look for the suspect, and a few minutes later one of the officers saw a man, later identified as Day, coming down from the second floor. Day was perspiring heavily and had a shirt wrapped around his head; he was wearing jeans, but no shirt. On the basement floor of the building, another officer found, stuffed behind an electrical box, a pair of dark blue gym shorts, a gray T-shirt, a pair of white tennis shoes, and "a sleeve off of another gray T-shirt that had two slits cut in it and a knot tied in the top of it." These items matched those worn by the robber at the time of the robbery. The officer reported that the T-shirt and mask were visibly damp, "like they had been sweated in," and the clothes smelled like "they had recently been worn and sweated in."

When the officers brought Day outside to where Johnson and Hooker were, Johnson indicated that Day looked "bigger" or "more built" than the man who robbed him, but that Day was the same "body height." Johnson also noted that Day was dressed differently than the robber. Hooker noted at trial that the man he followed down the street was of average size and weight and that Day, who he saw at the apartment building, was also of average size and weight.

While the police were still on-scene, Johnson went to a rock wall that the suspect had ran past while fleeing because Johnson noticed that after the suspect had left that area, the suspect was no longer carrying items he had possessed earlier while he was running away. There, Johnson found a garbage can with part of a gray T-shirt and a sheath holding the knife used in the crime. Johnson took the garbage can back to law enforcement, who recovered the knife and a T-shirt with a sleeve cut off.

The State charged Day with robbery and a deadly weapon enhancement. At his arraignment, Day advised the court he wished to proceed pro se; an attorney from the public defender's office was appointed to act as standby counsel. Prior to trial, the defense moved for a psychological evaluation pursuant to I.C. §§ 18-210, 18-211, and 18-212. The district court granted the motion; however, Day refused to participate in the evaluation. The court advised Day that his case could not proceed without the evaluation, assured him that the evaluation would not be used as evidence against him, and then asked Day how he wished to proceed. Day initially responded that he did not "want to talk to any private-interest State person," but later

2

indicated he would be willing to participate in an evaluation. The court entered another order for an evaluation. The second evaluator determined that Day was competent to stand trial.

After the evaluation, Day sent a document to the court which the court construed as an objection to the evaluator's report. During a hearing, the court asked Day if he wanted to present testimony on the nature of his disagreement, or have the court appoint a different evaluator. Day answered: "Well, I won't agree to be evaluated by anybody. . . . Whatever you see fit I'll go with." Day also informed the court that he wanted someone to assist him with his case. The court agreed to appoint the public defender who was acting as standby counsel to represent Day, with the understanding that Day could later elect to proceed pro se. When asked for his position on the competency evaluation, defense counsel advised the court that he had read the evaluation and had some concerns, but did not "particularly disagree with the report as a whole." Therefore, he stated he would be "willing to abide by the recommendations" that Day was competent to stand trial. The district court then ruled that Day was competent to stand trial.

At the pretrial conference, Day's counsel told the court that he had an opportunity to discuss the competency evaluation with Day and indicated that Day was concerned that the prior evaluation was not prepared in accordance with the statute. As a result, Day's counsel informed the court that Day was interested in participating in another evaluation. Day disagreed with his counsel, but nevertheless said that he would be "just fine with talking" to the "state hospital." In response, the district court told Day he would order another evaluation by a different evaluator if Day so desired. The district court asked Day multiple times if he wanted another evaluation and Day responded that he did not want another evaluation in the Bonneville County Jail, that the court did not need to request a second evaluation, and then told the court, "[L]et's go to trial." The court then scheduled the case for trial.

At trial, the jury found Day guilty of robbery and the State dismissed the weapon enhancement. The district court imposed a unified fifteen-year sentence with five years determinate. Day timely appeals.

## II.

## DISCUSSION

On appeal, Day contends that: (1) the district court abused its discretion by failing to order an additional competency evaluation, (2) the prosecutor made statements during closing argument that rise to the level of fundamental error, and (3) his sentence is excessive. The State

3

contends that the district court did not abuse its discretion by declining to order another competency evaluation. The State further contends that Day has failed to show fundamental error in regard to the prosecutor's comments and that the district court did not abuse its discretion by imposing a unified fifteen-year sentence with five years determinate.

## A. Competency Evaluation

The decision to order an evaluation to determine a defendant's competency to stand trial is within the discretion of the trial court. *State v. Hanson*, 152 Idaho 314, 325, 271 P.3d 712, 723 (2012). "Accordingly, a trial judge is under a continuing duty to observe a defendant's ability to understand the proceedings against him." *State v. Potter*, 109 Idaho 967, 969, 712 P.2d 668, 670 (Ct. App. 1985). By statute, if there is a reason to doubt the defendant's competency, the court must order a "qualified psychiatrist or licensed psychologist to examine and report upon the mental condition of the defendant to assist counsel with defense or understand the proceedings." *Hanson*, 152 Idaho at 324, 271 P.3d at 723 (quoting I.C. § 18-211(1)). The two-pronged test for competency to stand trial is "whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as factual, understanding of the proceedings against him." *Hanson*, 152 Idaho at 324, 271 P.3d at 723 (quoting *Dunlap v. State*, 141 Idaho 50, 59, 106 P.3d 376, 385 (2004)). There are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed." *Hanson*, 152 Idaho at 324, 271 P.3d at 723. The opinion of the defendant's attorney is not determinative, but the attorney "is in the best position to evaluate a client's comprehension of the proceedings." *Id.* (quoting *Dunlap*, 141 Idaho at 59, 106 P.3d at 385). However, "the mere fact that a defendant did not heed his counsel's advice and was uncooperative or that his conduct on the stand would have more likely hurt than help his case, does not render him incompetent to stand trial." *Hanson*, 152 Idaho at 324, 271 P.3d at 723. Thus, where the court reasonably considers both prongs of the test, its decision to deny an attorney's request for a competency evaluation is not an abuse of discretion. *Id.* at 325, 271 P.3d at 724.

In this case, Day initially filed the motion for a competency evaluation, which the district court granted. Day, however, refused to cooperate in that evaluation. At the pretrial conference, Day indicated he would be willing to participate in an evaluation. The second court-ordered evaluation was conducted, and the psychologist who evaluated Day stated:

4

It is the opinion of this examiner that the defendant does not suffer from a mental disease or defect, as stated in Idaho Code [§] 18-210 and therefore is fit to proceed. His intellect appears to be quite sharp and he is quite experienced in the judicial process. Though this defendant may not demonstrate appropriate courtroom decorum nor act in a way that would be advisable by his appointed counsel, it is the opinion of this examiner that apparent deficits are not the result of a psychiatric illness nor intellectual deficit. Rather, his behavior is consistent with what would be expected of someone who is antisocial. Though he may not exercise proper judgment, he is capable of doing so and does not lack the capacity to make informed decisions.

The psychologist concluded that Day "is fit to proceed and does not require nor would he benefit from a period of restoration in a psychiatric facility," and recommended that the case proceed "without further delay due to concerns regarding [Day's] mental condition."

Day objected to the psychologist's report. A hearing was held, and although the court was not required to order another evaluation, the court offered Day the option of having another evaluation by a different evaluator or, alternatively, holding a hearing to allow Day to present evidence contesting the psychologist's findings. Once again, Day refused to be evaluated by anyone. When the district court then asked for the opinion of Day's counsel on the matter, he stated:

I understand the conclusions that were drawn in the report. I don't know that I agree with them completely, but I don't particularly disagree with the report as a whole. And I personally would probably be willing to abide by the recommendations that are made in there that he's--that [Day's] competent to stand trial and leave it at that. But I have not specifically discussed those findings with [Day].

At the end of the hearing, the district court ruled that Day was competent to stand trial.

One month later, at the pretrial conference, Day's counsel explained that he had discussed the competency evaluation with Day and that Day "felt like perhaps protocol wasn't followed appropriately." Day's counsel stated that there were still some additional concerns that he had and advised the court that Day was willing to meet with another evaluator. However, Day contradicted his counsel, informing the court that he was not going to participate in another evaluation and that the matter should proceed to trial. Therefore, the court did not order another evaluation and the case proceeded to trial.

Day claims that the court abused its discretion by failing to order another competency evaluation. In support of his argument, Day notes that throughout the duration of the case he

5

wrote a number of letters to the district court and staff, some of which were incomprehensible. Competence only requires that a defendant have the ability to understand the proceedings against him and assist in his own defense. *See* I.C. § 18-210. We have previously stated that "[a] prior determination is not conclusive but the trial court may consider such examinations, particularly when recently made." *Potter*, 109 Idaho at 969, 712 P.2d at 670. In *Potter*, this Court held that the district court did not err by failing to conduct a second mental evaluation, where there had been a prior determination and no change in the defendant's mental condition had been shown. *See id.* at 970, 712 P.2d at 671. We stated: "There is no reason why a second mental evaluation should have been conducted by the district court, without facts in the record showing Potter's mental condition had changed since the previous evaluation." *Id.* In this case, the psychologist who evaluated Day concluded that Day was in fact competent to proceed under the statute. At both the subsequent status and pretrial hearings that were held, neither Day nor his counsel claimed that Day's mental status had changed; nor does any evidence in the record show a change in Day's mental condition between the evaluation and trial.

Moreover, the district court repeatedly offered to accommodate Day, but Day nevertheless refused to contest the prior findings or submit to another evaluation. In addition, the record contains considerable evidence that Day understood the proceedings and had the ability to consult with counsel. Counsel advised the court that he had conferred with Day regarding the mental evaluations, and never indicated that he had any difficulty communicating with Day. Day filed motions pro se requesting information relevant to his defense and to admit certain evidence. He also asked during one of the hearings that the district court allow him to have a sort of "hybrid" defense, where he and defense counsel worked more as a team, as opposed to the traditional option of proceeding pro se or being represented by counsel.

In summary, the district court had ample evidence before it regarding Day's ability to assist in his defense and understand the proceedings. Concerns about Day's letters, or even his mental health generally, do not demonstrate legal incompetence. In regard to incoherence, the evaluator suggested to Day that his periods of incoherent behavior were the product of malingered psychiatric illness, this suggestion engendered an angry but articulate, logical, and nuanced response, in which Day "would forget to feign incoherence." Considering the psychologist's recent finding that Day was competent and Day's representations that he wanted

to go to trial and would not participate in another evaluation, the court acted within its discretion by declining to order another competency evaluation.

**B.      Prosecutorial Misconduct**

Day contends that comments made by the prosecutor during rebuttal closing argument constituted prosecutorial misconduct, and that such misconduct rose to the level of fundamental error. Day points to the following statements of the prosecution in rebuttal argument:

> Again, it's not the State that's on trial, it's not me that's on trial, it's not Detective Barnes that's on trial, it's not Detective Pratt that's on trial. The defendant is the one on trial, and the focus is on evidence that you have during the relevant time periods.
>
> The Jury Instruction Number 6 is going to tell you, "Some of you have probably heard the terms 'circumstantial evidence,' 'direct evidence' and 'hearsay evidence.' Do not be concerned with these terms. You are to consider all the evidence admitted in this trial." You can't concern yourself with speculative evidence that [defense counsel] has alluded to. You only consider the evidence that is in the trial.
>
> . . . .
>
> Again, we have the defense talking about evidence that we didn't bring in. You're not to consider that. There are various Rules of Evidence. We're not allowed to bring in hearsay evidence. An interview with--testimony about an interview with Tim Hudson would have been hearsay evidence.
>
> . . . .
>
> Hearsay evidence is just not something we try to introduce. Again, you're only to consider the evidence that has been introduced and not speculate on the evidence that might be out there and whether the police failed or I failed to bring in certain evidence just because we failed. There are various reasons, and the Rules of Evidence are what bind us as to what evidence we can and cannot bring in.

Day made a contemporaneous objection to the prosecutor's closing comments at trial. However, the objection rested on different grounds than those advanced on appeal. Day concedes this point, but argues that the comments amount to fundamental error. Therefore, we review the prosecutor's comments for fundamental error. *See State v. Adamcik*, 152 Idaho 445, 477, 272 P.3d 417, 449 (2012) (reviewing jury instructions for fundamental error where defendant had objected at trial on different grounds than the ones advanced on appeal). In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court clarified the fundamental error doctrine as it applies to allegations of prosecutorial misconduct. If the alleged misconduct was not followed by a contemporaneous objection, an appellate court should reverse when a defendant persuades the court that the alleged error: (1) violates one or more of the

7

defendant's unwaived constitutional rights, (2) the error is clear or obvious without the need for reference to any additional information not contained in the appellate record, and (3) the error affected the outcome of the trial proceedings. *Id*. at 226, 245 P.3d at 978.

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id*.; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id*. A fair trial is not necessarily a perfect trial. *Id.*

Day claims that he has satisfied Perry's first prong because the prosecutor's comments violated his Fourteenth Amendment right to due process and his Sixth Amendment right to an impartial jury.[1] According to Day, the prosecutor's comments implied that there was other evidence favorable to the prosecution that the State either failed to collect or was prohibited from presenting by the judicial system.

The Idaho Supreme Court has stated that a prosecutor's comments "must be evaluated in light of defense conduct and in the context of the entire trial." *State v. Severson*, 147 Idaho 694, 719, 215 P.3d 414, 439 (2009); *see also Darden v. Wainwright*, 477 U.S. 168, 179 (1986) (stating that when the State's closing follows the defense's, "[t]he prosecutors' comments must be evaluated in light of the defense argument that preceded it."). Indeed, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether

---

[1] Day also argues that the comments violated his state constitutional rights. However, Day does not provide authority for the proposition that the Idaho Constitution provides any greater protection in this area than federal constitutional standards. In the absence of any argument to the contrary, we will assume the United States provisions and Idaho provisions are coextensive.

the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11 (1985).

The defense's closing argument sought to highlight what it considered a lack of evidence that Day committed the crime charged. As part of this argument, defense counsel apologized to the jury for what it characterized as the State's failure to provide the jury with "proper" evidence, meaning direct evidence. Counsel complained of Johnson's failure to positively identify Day at the scene, the State's inability to obtain adequate fingerprint evidence from the knife used, and the lack of DNA evidence in the case. In regard to the circumstantial evidence provided by the State, defense counsel stated:

> To be fair to you as a jury, I believe that if the State's going to present circumstantial evidence to you, they need to have investigated that evidence well enough to explain all possible explanations of that evidence beyond a reasonable doubt; and I don't think they did that here. They didn't take any effort at all. They just decided Brandon Day was the guy who they were after, and so they weren't going to do anything. . . . I think it illustrates well the deficiencies in the investigation and in presenting this case.

Defense counsel also specifically highlighted that the State had failed to interview Hudson, Day's cell mate, who sent a letter from jail that contained cash in the same amount and denominations as the cash taken in the robbery. In the letter, Hudson asked that $200 of the money be added to Day's account. The lack of evidence in this case, the defense argued, was directly attributable to failings on the part of the State.

The prosecutor's comments responded directly to defense counsel's claims that the State's evidence was not "proper," and that the State could have interviewed Hudson or Day to find out the source of the confiscated money, but failed to do so. The prosecutor advised the jury that it could not speculate about evidence that did not exist, i.e. what Hudson or Day might have said regarding the money. This was not improper. The prosecutor's comments did not imply that there was favorable evidence from Hudson or other sources. Rather, the State sought to prevent speculation, in general, regarding evidence that may or may not have existed. The State openly acknowledged from the beginning that its case was circumstantial and that certain evidence was not obtained. The prosecutor's comments attempted to point out that evidence might not be presented at trial for a multitude of reasons: "[Y]ou're only to consider the evidence that has been introduced and not speculate on the evidence that might be out there and whether the police failed or I failed to bring in certain evidence just because we failed. There are

9

various reasons, and the Rules of Evidence are what bind us as to what evidence we can and cannot bring in." The State's comments were made in order to rebut the defense's argument that any evidence not presented was solely the result of the State's failures and that the State's evidence was not "proper." Considering the defense's closing argument, we cannot say that the prosecutor's comments were improper, let alone amounted to fundamental error.

## C.   Excessive Sentence

Day contends that his unified sentence of fifteen years with five years determinate is excessive. Our appellate standard of review and the factors to be considered when evaluating the reasonableness of a sentence are well established. *State v. Burdett*, 134 Idaho 271, 1 P.3d 299 (Ct. App. 2000); *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct. App. 1989); *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct. App. 1982); *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007). Applying these standards, and having reviewed the record in this case, we cannot say that the district court abused its discretion.

### III.

### CONCLUSION

Day has failed to show that the district court abused its discretion by refusing to order another competency evaluation. The prosecutor's comments during rebuttal closing argument did not constitute fundamental error. Finally, the district court did not abuse its discretion by sentencing Day to a unified term of fifteen years with five years determinate. Therefore, Day's judgment of conviction and sentence are affirmed.

Judge LANSING and Judge GUTIERREZ **CONCUR.**